## IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH CENTRAL DIVISION

| | |
|---|---|
| LOUIS EUGENE WILSON,<br><br>          Plaintiff,<br><br>     v.<br><br>J. R. WHEELER et al.,<br><br>          Defendants. | **MEMORANDUM DECISION AND ORDER**<br><br>Case No. 2:05-CV-582 TS<br><br>District Judge Ted Stewart |

Plaintiff, Louis Eugene Wilson, an inmate at the Utah State Prison, filed this *pro se* civil rights suit under 42 U.S.C. § 1983.  *See* 42 U.S.C.A. § 1983 (West 2009).  Plaintiff was allowed to proceed *in forma pauperis* under 28 U.S.C. § 1915(b).  *See* 28 *id.* § 1915.  Before the Court are Plaintiff's and Defendants' motions for summary judgment.

### ANALYSIS

### I. Summary Judgement Standard

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses . . . ."  Cellotex v.

Catrett, 477 U.S. 317, 324, 106 S. Ct. 2548, 2553 (1986). Thus, Rule 56(a) of the Federal Rules of Civil Procedure allows a party to move "with or without supporting affidavits for a summary judgment in the party's favor upon all or any part of [a claim]." Fed. R. Civ. P. 56(a).

The party moving for summary judgment bears the initial burden of showing "that there is an absence of evidence to support the non-moving party's case." *Cellotex v. Catrett*, 477 U.S. 317, 325 (1986). This burden may be met merely by identifying portions of the record which show an absence of evidence to support an essential element of the opposing party's case. *Johnson v. City of Bountiful*, 996 F. Supp 1100, 1102 (D. Utah 1998).

Once the moving party satisfies its initial burden "the burden then shifts to the nonmoving party to make a showing sufficient to establish that there is a genuine issue of material fact regarding the existence of [the disputed] element." *Id.* Federal Rule of Civil Procedure 56(e) requires a nonmovant "that would bear the burden of persuasion at trial" to "go beyond the pleadings and 'set forth specific facts' that would be admissible in evidence in the event of a trial from which a rational trier of fact could find for the nonmovant." *Adler v. Wal-Mart Stores*, 144 F.3d 664, 671 (10th Cir. 1998). The specific facts put forth

by the nonmovant "must be identified by reference to an affidavit, a deposition transcript or a specific exhibit incorporated therein." *Thomas v. Wichita Coca-Cola Bottling*, 968 F.2d 1022, 1024 (10th Cir. 1992). Mere allegations and references to the pleadings will not suffice. However, the Court must "examine the factual record and reasonable inferences therefrom in the light most favorable to the party opposing the motion." *Lopez v. LeMaster*, 172 F.3d 756, 759 (10th Cir. 1999).

## II. Factual Record

The material facts summarized here are taken from Plaintiff's Complaint and Defendants' *Martinez* report and are essentially undisputed.[1]  Plaintiff was transferred from the Weber County Jail to the Utah State Prison (USP) on October 13, 2004.  Upon his arrival at USP an "Inmate Property Inventory" form was prepared listing all of Plaintiff's personal property which included one pair of eyeglasses, various articles of clothing, matches, a cigarette lighter, three tokens, a chain necklace, and a broken pair of sunglasses.  (Compl. Ex. 1.) According to the inventory form the eyeglasses were returned to Plaintiff while the remaining items were placed on disposition,

_____

[1]  Although Plaintiff disputes the information in the *Martinez* report regarding the value of his chain necklace, that information is not material to the issues addressed here.

3

meaning they had to be sent out of the prison.  The same day,
Plaintiff completed and signed a "Property Release/Disposition
Form" (no. 181847) acknowledging that the prohibited items must
be mailed or picked up within thirty days or else they would be
donated to charity.  In the blank identifying who could pick up
the property Plaintiff wrote "Anyone."[2]  (Compl. Ex. 2.)  On
November 1, 2004, a notice was sent to Plaintiff informing him
that if his property was not picked up by November 14, 2004, it
would be donated to charity.  On November 5, 2005, Plaintiff
completed and signed another "Property Release/Disposition Form"
(no. 187722) requesting that his property be mailed to a person
in Tyler, Texas.  (Compl. Ex. 3.)  Defendant Holmes returned the
form to Plaintiff with a notation stating that pursuant to prison
policies Plaintiff was not eligible for indigent mailing because
he knew people within 100 miles of the prison who could pick up
his property.  Plaintiff responded by submitting an undated,
handwritten note reiterating his request that his property be
mailed to a person in Texas.  (Compl. Ex. 4.)  Holmes again
replied by returning the letter to Plaintiff with a notation that
Plaintiff was not eligible for indigent mailing as previously

---

[2]  Plaintiff states that he was told by Defendant Robb to
identify "anyone" as the authorized recipient to make it easier
to arrange for the items to be retrieved.

explained.  Plaintiff then submitted another undated, unsigned letter to Holmes denying that he knew anyone within 100 miles who could pick up his property and again requesting that it be mailed to Texas.  (Compl. Ex. 5.)  Plaintiff also claimed that he did not know who Holmes thought could pick up the property.  Holmes once again returned the letter with a notation stating that Plaintiff was ineligible for indigent mailing and identifying three individuals in Ogden, Utah, who were identified in Plaintiff's visitation records that Holmes believed could pick up Plaintiff's property.  In response to a subsequent inquiry Plaintiff received a letter from Defendant Wheeler, the property lieutenant, stating that the property was never picked up and on December 1, 2004, it was donated to charity.  (Compl. Ex. 6.)

Plaintiff subsequently filed a Level 1 grievance requesting compensation for the lost items.  Defendant Carlson denied the initial grievance (no. 990857089) on January 20, 2005, noting that Plaintiff had received adequate warning but apparently failed take appropriate action.  (Compl. Ex. 9.)  Carlson also erroneously stated there was no record Plaintiff ever requested to have his property mailed.  Plaintiff's Level 2 grievance was denied on February 28, 2005, by Billie Casper and Tom Anderson who stated that Plaintiff's property was donated "in accordance with policy."  (Compl. Ex. 10.)  Finally, on March 19, 2005,

5

Plaintiff's Level 3 grievance was denied by Craig Balls who
stated he could not find any record of Plaintiff's request for
indigent mailing, that prison visitation records showed Plaintiff
had contacts in Ogden, Utah, and that the matter was properly
handled according to prison policies.  (Compl. Ex. 11.)

Plaintiff's Complaint originally asserted causes of action
for denial of due process and cruel and unusual punishment,
however, the latter claim was dismissed on screening leaving only
the due process claim remaining.[3]  The Complaint seeks
compensatory damages totaling $1,291.50, punitive damages of
$10,000, attorney fees and costs, and "such other and further
relief the court deems just and proper."[4]

### III. Motions for Summary Judgment

Defendants' motion for summary judgment asserts that the
undisputed facts in this case do not show a due process violation
of constitutional dimensions and, alternatively, that even if a
due process violation occurred Defendants are entitled to
qualified immunity because the right at issue was not clearly

---

[3] In its Memorandum Decision and Screening Order entered
July 2, 2007, the Court found that Plaintiff's Complaint did not
present any independent legal or factual grounds for his Eighth
Amendment claim, therefore, that claim was subsumed by the due
process claim.  Plaintiff has not challenged that determination.

[4] The Court construes Plaintiff's request for "other and
further relief" to include declaratory damages.

6

established.  Plaintiff has also filed a one-page motion for summary judgment in his favor, however, Plaintiff's motion does not include a supporting memorandum or affidavits.[5]  Before deciding whether the evidence in this case shows a constitutional violation, the Court will first address whether Plaintiff's due process claim is cognizable under Section 1983.

## A. Applicability of Section 1983

As a general matter, the Supreme Court has recognized that rights in property are basic civil rights protected under the Fourteenth Amendment. *Lynch v. Household Fin. Corp.*, 405 U.S. 538, 552, 92 S. Ct. 1113, 1122 (1972).  Moreover, "Section 1983 does not distinguish between personal liberties and property rights, and a deprivation of the latter without due process gives rise to a claim under § 1983." *Gillihan v. Shillenger*, 872 F.2d 935, 939 (10th Cir. 1989).  Despite these general propositions, however, the Supreme Court has held that in some circumstances property deprivations caused by state employees may not give rise to a viable § 1983 claim.

In Hudson v. Palmer, 468 U.S. 517, 533, 104 S. Ct. 3194,

_____

[5]  Defendants' response brief appears to construe Plaintiff's summary judgment motion as limited to the issue of the value of Plaintiff's property.  Plaintiff's motion, however, explicitly seeks "summary judgment on the . . . case." (Pl.'s Mot. Sum. J. at 1.)

3203-04 (1984), the Supreme Court held that "an *unauthorized* intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful post-deprivation remedy for the loss is available."  (Emphasis added.) Thus, in a § 1983 action for damages resulting from the unauthorized or random deprivation of property without procedural due process the plaintiff has the burden of pleading and proving that state processes, including state damage remedies, are inadequate to redress the claimed wrong.  *See Gillihan v. Shillenger, 872 F.2d 935, 940 (10th Cir. 1989); Vicory v. Walton, 721 F.2d 1062, 1063 (6th Cir. 1983)*.

The limitation set out in *Hudson*, however, does not apply where the alleged deprivation "is not random and unauthorized, but is pursuant to an affirmatively established or de facto policy, procedure, or custom." *Hudson*, at 939.  Rather, in such cases "the state has the power to control the deprivation" and, therefore, "the availability of an adequate state post-deprivation remedy is irrelevant and does not bar a § 1983 claim." *Id.* at 940.  *See also Gonzales v. City of Castle Rock, 366 F.3d 1093, 1112 (10th Cir. 2004)*.

In the present case, the property deprivation alleged by Plaintiff was not random or unauthorized but occurred pursuant to

an "affirmatively established or *de facto* policy, procedure, or custom" of the Utah Department of Corrections.  Defendants admit that prison policies allow an inmate's property may be donated to charity if he is found ineligible for indigent mailing and his property is not mailed out at his own expense or picked up within thirty days of being placed on disposition.  Moreover, according to prison policy only inmates who do not know anyone within 100 miles of the prison are eligible for indigent mailing.  Finally, Defendants admit that the determination in this case was made by someone with authority and in accordance with prison policies.  Thus, because the property deprivation here resulted directly from official policies, and not from any unauthorized action of a state employee, Plaintiff's claim is not barred by *Hudson* and is cognizable under Section 1983.

### B. Due Process Claim

#### i. Legal Standard

The procedural due process guarantee found in the Fourteenth Amendment "ensures that a state will not deprive a person of life, liberty or property unless fair procedures are used in making that decision." *Kirkland v. St. Vrain Valley Sch. Dist., 464 F.3d 1182, 1189 (10th Cir. 2006)*.  To make out a procedural due process claim a plaintiff must show: (1) that he has a constitutionally protected property interest that has been

interfered with by the state; and, (2) that he was not afforded an appropriate level of process. *Couture v. Board of Educ. of Albuquerque Pub. Sch., 535 F.3d 1243, 1256 (10th Cir. 2008)*.

Although a prisoner is not "wholly stripped of constitutional protection when he is imprisoned," *Gwinn v. Awmiller, 354 F.3d 1211, 1216 (10th Cir. 2004)*, the Tenth Circuit has recognized that the extent of due process protection extended to prisoners is "significantly less than that guaranteed to free persons." *Estate of DiMarco v. Wyoming Dept. Of Corr., 473 F.3d 1334, 1339 (10th Cir. 2007)*.  Under Supreme Court precedent, "a deprivation occasioned by prison conditions or a prison regulation does not reach protected liberty interest status and require procedural due process protection unless it imposes an 'atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" *Steffey v. Orman, 461 F.3d 1218, 1221 (10th Cir. 2006)* (quoting *Sandin v. Conner, 515 U.S. 472, 484, 115 S. Ct. 2293, 2300 (1995)*).  The Tenth Circuit has held that "property interest claims by prisoners are also to be reviewed under *Sandin's* atypical-and-significant-deprivation analysis."  *Id*.

In *Gillihan v. Shillenger, 872 F.2d 935 (10th Cir. 1989)*, the Tenth Circuit held that when a property deprivation "is not random and unauthorized, but is pursuant to an affirmatively

established or *de facto* policy, procedure, or custom, the state has the power to control the deprivation and, therefore, generally must, in the absence of compelling reasons to the contrary, give the plaintiff a predeprivation hearing." *Id*. at 939-40.  When evaluating the timing and nature of the hearing due a plaintiff, courts must consider three factors: (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail."  *Id*.; *see also Mathews v. Eldridge*, 424 U.S. 319, 335, 96 S. Ct. 893, 903 (1976).

### ii. Sufficiency of Process Afforded Plaintiff

Before addressing the three factors laid out in *Mathews* the Court must first determine whether the deprivation here amounted to an atypical and significant hardship, as required under *Sandin*.  While restrictions on personal property are undoubtedly an ordinary incident of prison life, the permanent deprivation of legally held personal property is not.  As demonstrated here, it is not unusual for inmates to arrive in jail or prison with items which, although not permitted into the detention facility, are

11

still legally protected property.  Denying due process
protections for such property not only increases the likelihood
of erroneous deprivations but also creates opportunities for
abuse.  Thus, the Court concludes that permanently depriving an
inmate of personal property legally possessed at the time of
booking amounts to an atypical and significant hardship in
relation to the ordinary incidents of prison life which requires
procedural due process protections.

Having determined that Plaintiff had a protected property
interest the Court must now evaluate the sufficiency of the
procedures employed here.  Under *Gillihan*, absent "compelling
reasons to the contrary," Plaintiff was entitled to a pre-
deprivation hearing.  *Gillihan*, 872 F.2d at 939-40.  The Court
must now consider the three factors set out in *Mathews* to decide
whether there was any compelling reason to deny a pre-deprivation
hearing under the circumstances presented.

The first *Mathews* factor requires consideration of the
private interest that will be affected by the official action
under review.  Here, the private interest at stake is an inmate's
right not to be permanently deprived of property legally
possessed at the time of booking.  Regardless of their monetary
value, the items possessed by an inmate at the time of his
booking--including his clothing, jewelry, etc.--may well include

12

some of his most prized possessions.  Moreover, in some cases, those items may be the only things the inmate has left upon his release.  The Court rejects Defendants' assertion that Plaintiff lacked a protected property interest here merely because the items in question were unnecessary for prison life, or because Plaintiff knew or should have known that the items would not be allowed into the prison.  The right to retain certain items while incarcerated is irrelevant to whether an inmate should be afforded due process before being permanently deprived of belongings confiscated during booking.  Thus, the Court finds the private interest affected in this case to be substantial.

The second prong of the *Mathews* test requires consideration of the risk of an erroneous deprivation through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards.  This factor also weighs heavily in Plaintiff's favor.  As demonstrated in this case, the risk of an erroneous deprivation under the procedures used here is significant.  From the record it does not appear that there are set guidelines for determining an inmate's eligibility for indigent mailing, nor is it clear who is authorized to make such determinations.  There also appears to be no reliable method for evaluating whether an inmate knows someone who can retrieve his property.  And, most importantly, there does not appear to be any

effective means to timely appeal indigent mailing determinations before disposal of an inmate's property.

In the present case it appears that Defendant Holmes unilaterally determined, based solely on prison visitation records, that Plaintiff was ineligible for indigent mailing. Plaintiff twice attempted to challenge this determination in writing but each time he was summarily thwarted by Holmes. Thus, not only was Plaintiff denied any opportunity to be heard prior to disposal of his property, there was also no timely review of Holmes determination that Plaintiff was ineligible for indigent mailing. Given these considerations the probable value of additional or substitute procedural safeguards, such as a pre-deprivation hearing, appears substantial. If Plaintiff was afforded a pre-deprivation hearing he could have at least addressed whether the people identified from his visitation records were, in fact, viable prospects for retrieving his property.

Finally, the Court addresses the State's interest in maintaining the procedures used here, as well as the fiscal and administrative burdens that additional or substitute procedural requirements would entail. Regarding the adequacy of current procedures Defendants assert that post-deprivation grievance procedures already available to inmates are sufficient to satisfy

14

procedural due process under the circumstances presented here.
As support for this assertion Defendants rely exclusively upon a
Third Circuit opinion in *Tillman v. Lebanon County Corr. Fac.,
221 F.3d 410 (3d Cir. 2000)*, which upheld the levying and
collection of fees from an inmate's trust account for housing
costs incurred during incarceration.  Citing the Supreme Court's
decision in *Parratt v. Taylor*, 451 U.S. 527, 538, 101 S. Ct.
1908, 1916 (1981), the *Tillman* court noted that "where the State
must take quick action, or where it is impractical to provide
meaningful predeprivation process, due process will be satisfied
by a meaningful postdeprivation remedy."  *Id*.  The *Tillman* court
went on to observe, however, that "'*Parratt* is not an exception
to the *Mathews* balancing test, but rather an application of that
test to the unusual case in which one of the variables in the
*Mathews* equation- the value of predeprivation safeguards -is
negligible in preventing the kind of deprivation at issue.'"  *Id.*
at 421 (quoting *Zinermon v. Burch*, 494 U.S. 113, 129, 110 S. Ct.
975, 985 (1990).  Thus, in upholding the denial of a pre-
deprivation hearing the *Tillman* court relied on the
impracticality of pre-deprivation hearings, the fact that the
levying of fees involved "routine matters of accounting, with a
low risk of error," and its determination that "erroneous
assessments or incorrect takings . . . [could be] corrected

15

through the prison's grievance program without any undue burden on a prisoner's rights." *Id*. at 422.

Not only is *Tillman* not controlling precedent in this Circuit but none of the determining factors from that case are present here.  First, the decision at issue here are not "routine matters of accounting" but rather nuanced judgments regarding disposition of property which must allow for flexible application of prison policies to a range of different situations.  Second, as previously discussed, the risk of error without a pre-deprivation hearing is significant.  And, third, erroneous deprivations of personal property cannot be easily corrected through the grievance system given the impossibility of recovering property once it has been donated and the difficulty of placing a monetary value on many items.

Regarding the fiscal and administrative burdens that additional or substitute procedural requirements would entail, Defendants assert that additional procedures "would place a great financial and administrative burden on the prison."  Defendants, however, have not offered any evidence to support this statement.  Given that the prison already affords hearings of various types to inmates there is little reason to believe that holding a pre-deprivation hearing under the present circumstances would be a substantial financial or administrative burden.  This is

particularly true given that property disposition decisions are
not time sensitive and hearings could be scheduled at the
prison's convenience.  While some additional storage space may be
required to retain inmate property until hearings are completed,
that would only be necessary in the limited number of cases where
property is not timely retrieved and indigent mailing is denied.
This minimal burden is not a compelling reason to deny pre-
deprivation hearings.

In sum, the Court concludes that the procedures used to
divest Plaintiff of his property in this case did not comply with
Fourteenth Amendment procedural due process requirements.  As
required by the Tenth Circuit in *Gillihan*, Plaintiff was entitled
to a pre-deprivation hearing to address his eligibility for
indigent mailing before having his property donated to charity.
Moreover, based on the factors laid out by the Supreme Court in
*Mathews*, the Court finds no compelling reason to deny such
hearings under these circumstances.

### C. Qualified Immunity

### i. Legal Standard

The doctrine of qualified immunity shields government
officials from individual liability for civil damages "insofar as
their conduct does not violate clearly established statutory or
constitutional rights of which a reasonable person would have

known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 2738 (1982). Qualified immunity is "an immunity from suit rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go trial." *Mitchell v. Forsyth*, 472 U.S. 511, 526, 105 S. Ct. 2806, 2815 (1985). Thus, the Supreme Court has held that immunity questions should be addressed at the earliest possible stage in litigation. *Hunter v. Bryant*, 502 U.S. 224, 227, 112 S. Ct. 534, 537 (1991).

Given the underlying purposes of qualified immunity, courts address qualified immunity questions differently from other summary judgment decisions. *Medina v. Cram*, 252 F.3d 1124, 1128 (10th Cir. 2001). Once a defendant asserts qualified immunity the burden then shifts to the plaintiff, who must meet a "heavy two-part burden." *Id.* Plaintiff must first establish that the facts, taken in the light most favorable to plaintiff, show that the officer's conduct violated a constitutional right. *Saucier, 533 U.S. at 201*. If Plaintiff establishes a violation of a constitutional or statutory right, "the next, sequential step is to ask whether the right was clearly established." *Id.* This determination must be made "in the light of the specific context of the case, not as a broad general proposition." *Id.* If the plaintiff fails to satisfy either part of this "heavy two-part

burden," the Court must grant the defendant qualified immunity
and dismiss the deficient claims.

### ii. Defendants' Entitlement to Qualified Immunity

Having concluded that Plaintiff's Fourteenth Amendment right
to procedural due process was violated, the Court must now decide
whether that right, viewed in the specific context of this case,
was clearly established at the time of the violation.

"The law is clearly established when a Supreme Court or
Tenth Circuit decision is on point, or if the clearly established
weight of authority from other courts shows that the right must
be as plaintiff maintains." _Roska ex rel. Roska v. Peterson_, 328
F.3d 1230, 1248 (10th Cir. 2003).  "The relevant, dispositive
inquiry in determining whether a right is clearly established is
whether it would be clear to a reasonable officer that his
conduct was unlawful in the situation he confronted." _Saucier,
501 U.S. at 202_.  "Qualified immunity shields an officer from
suit when she makes a decision that, even if constitutionally
deficient, reasonably misapprehends the law governing the
circumstances she confronted." _Brosseau v. Haugen_, 543 U.S. 194,
198, 125 S. Ct. 596, 598 (2004).  If "the officer's mistake as to
what the law requires is reasonable . . . the officer is entitled
to the [qualified] immunity defense." _Saucier, 533 U.S. at 205-
06_.  Thus, qualified immunity protects "all but the plainly

incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341, 106 S. Ct. 1092, 1096 (1986).

Applying the above standards the Court finds that the right to a pre-deprivation hearing in the instant circumstances was not clearly established at the time of the present violation. Although the Tenth Circuit's decision in *Gillihan* was published nearly fifteen years before the present violation occurred, the applicability of *Gillihan*'s pre-deprivation hearing requirement to the present situation is not so obvious that it would have been clear to a reasonable official in Defendants' position that their actions were unlawful. Defendants could have reasonably concluded, albeit mistakenly, that there were compelling reasons not to provide a pre-deprivation hearing to Plaintiff. The Tenth Circuit has held that "[a] mistake of law may be 'reasonable' where the circumstances 'disclose substantial grounds for the officer to have concluded he had a legitimate justification under the law for acting as he did.'" Holland ex rel. Overdorff v. Harrington, 268 F.3d 1179, 1196 (10th Cir. 2001) (quoting Saucier, 533 U.S. at 208). Here, despite their failure to provide a pre-deprivation hearing, Defendants acted pursuant to existing prison regulations which gave them substantial grounds

to believe their actions were justified.[6]  Moreover, Plaintiff has not come forward with a Supreme Court or Tenth Circuit opinion--nor is the Court aware of any--that would have placed Defendants on notice that the policies here were clearly unconstitutional.

Thus, the Court concludes that the right to a pre-deprivation hearing in this case was not clearly established at the time of the instant violation, therefore, Defendants are entitled to qualified immunity against Plaintiff's claims for compensatory and punitive damages.

---

[6]  Defendants' response brief argues that "a defendant that is acting pursuant to governing regulations cannot be on notice that his conduct is unlawful and therefore, would be entitled to qualified immunity."  (Defs.' Mem. Supp. Mot. Sum. J. at 16.)  As support for this broad statement Defendants cite only an unpublished Tenth Circuit opinion in *Burton-Bey v. U.S.*, No. 96-3241, 1996 WL 654457 (10th Cir. Nov. 12, 1996).  It appears, however, that Defendants have misinterpreted that case.  Although prison regulations in this instance gave Defendants legitimate justification for mistakenly believing their actions to be lawful, mere compliance with "governing regulations" does not, in every case, entitle an official to qualified immunity.

**ORDER**

Accordingly, **IT IS HEREBY ORDERED** that:

(1) Defendants' motion for summary judgment is **GRANTED** based on their entitlement to qualified immunity;

(2) Plaintiff's motion for summary judgment is **GRANTED IN PART** as to his request for declaratory relief and **DENIED** in all other respects.

DATED this 8th day of September, 2009.

BY THE COURT:

_____
TED STEWART
United States District Judge

22